**U.S. Department of Justice**

FILED
U.S. DISTRICT COURT
DISTRICT OF MARYLAND

*United States Attorney*

*District of Maryland*
*Northern Division* 2011 DEC -2  P 2: 23

CLERK'S OFFICE
AT BALTIMORE

_Rod J. Rosenstein_
_United States Attorney_

_Michael Cunningham_
_Assistant United States Attorney_

*36 South Charles Street*
*Fourth Floor* BY_____ DEPUTY
*Baltimore, Maryland 21201*

*DIRECT: 410-209-4884*
*MAIN: 410-209-4800*
*FAX: 410-962-3091*
*TTY/TDD: 410-962-4462*
*michael.cunningham@usdoj.gov*

November 15, 2011

Katherine Tang Newberger, Esquire
Office of the Federal Public Defender
Tower II, Suite 1100
100 South Charles Street
Baltimore, Maryland 21201-2705

      Re:    *Unites States v. Gary Allen Densmore*
              Criminal Nos. RDB-11-0359
                           RDB-11-0572 (SDIA Transfer) ✓
                           RDB-11-0583 (DSD Transfer)

Dear Ms. Newberger:

      This letter, together with the Sealed Supplement, confirms the plea agreement which has been offered to the Defendant by the United States Attorney's Office for the District of Maryland ("this Office"). If the Defendant accepts this offer, please have him execute it in the spaces provided below. If this offer has not been accepted by November 28, 2011, it will be deemed withdrawn. The terms of the agreement are as follows:

<u>Offense of Conviction</u>

      1.    The Defendant agrees to plead guilty to Count Two of the Indictment now pending against him in the District of Maryland, which charges him with bank robbery, in violation of 18 U.S.C. § 2113(a) and (f). Additionally, the Defendant agrees to plead guilty to each count of the indictments from the Southern District of Iowa (RDB-11-0572) and the District of South Dakota (RDB-11-0583), the transfers of which cases he has heretofore consented in accordance with Fed. R. Crim. P. 20. The Defendant admits that he is, in fact, guilty of those offenses and will so advise the Court.

*the information from*
*KTN*
*G.A.D.*

Revised 11/5/09

## Elements of the Offense

2.      The elements of all of the bank robberies to which the Defendant has agreed to plead guilty, and which this Office would prove if the case went to trial, are as follows:

       a.      The Defendant intentionally took from the person, or presence of the person, money or property;

       b.      The money or property belonged to, or was in the possession of, a federally insured bank or credit union at the time of the taking; and

       c.      The Defendant took the money or property by means of force and violence or acting in an intimidating manner.

## Penalties

3.      The maximum sentence provided by statute for the offenses to which the Defendant is pleading guilty is as follows: 20 years imprisonment, $250,000 fine and three years supervised release. In addition, the Defendant must pay $100.00 for each count as a special assessment pursuant to 18 U.S.C. § 3013, which will be due and should be paid at or before the time of sentencing. This Court may also order him to make restitution pursuant to 18 U.S.C. §§ 3663, 3663A, and 3664.[1]  If a fine or restitution is imposed, it shall be payable immediately, unless, pursuant to 18 U.S.C. § 3572(d), the Court orders otherwise.  The Defendant understands that if he serves a term of imprisonment, is released on supervised release, and then violates the conditions of his supervised release, his supervised release could be revoked - even on the last day of the term - and the Defendant could be returned to custody to serve another period of incarceration and a new term of supervised release.  The Defendant understands that the Bureau of Prisons has sole discretion in designating the institution at which the Defendant will serve any term of imprisonment imposed.

## Waiver of Rights

4.      The Defendant understands that by entering into this agreement, he surrenders certain rights as outlined below:

       a.      If the Defendant had persisted in his plea of not guilty, he would have had the right to a speedy jury trial with the close assistance of competent counsel.  That trial could be conducted by a judge, without a jury, if the Defendant, this Office, and the Court all agreed.

       b.      If the Defendant elected a jury trial, the jury would be composed of twelve

---

[1]      Pursuant to 18 U.S.C. § 3612, if the Court imposes a fine in excess of $2,500 that remains unpaid 15 days after it is imposed, the Defendant shall be charged interest on that fine, unless the Court modifies the interest payment in accordance with 18 U.S.C. § 3612(f)(3).

individuals selected from the community. Counsel and the Defendant would have the opportunity to challenge prospective jurors who demonstrated bias or who were otherwise unqualified, and would have the opportunity to strike a certain number of jurors peremptorily. All twelve jurors would have to agree unanimously before the Defendant could be found guilty of any count. The jury would be instructed that the Defendant was presumed to be innocent, and that presumption could be overcome only by proof beyond a reasonable doubt.

c.     If the Defendant went to trial, the government would have the burden of proving the Defendant guilty beyond a reasonable doubt. The Defendant would have the right to confront and cross-examine the government's witnesses. The Defendant would not have to present any defense witnesses or evidence whatsoever. If the Defendant wanted to call witnesses in his defense, however, he would have the subpoena power of the Court to compel the witnesses to attend.

d.     The Defendant would have the right to testify in his own defense if he so chose, and he would have the right to refuse to testify. If he chose not to testify, the Court could instruct the jury that they could not draw any adverse inference from his decision not to testify.

e.     If the Defendant were found guilty after a trial, he would have the right to appeal the verdict and the Court's pretrial and trial decisions on the admissibility of evidence to see if any errors were committed which would require a new trial or dismissal of the charges against him. By pleading guilty, the Defendant knowingly gives up the right to appeal the verdict and the Court's decisions.

f.     By pleading guilty, the Defendant will be giving up all of these rights, except the right, under the limited circumstances set forth in the "Waiver of Appeal" paragraph below, to appeal the sentence. By pleading guilty, the Defendant understands that he may have to answer the Court's questions both about the rights he is giving up and about the facts of his case. Any statements the Defendant makes during such a hearing would not be admissible against him during a trial except in a criminal proceeding for perjury or false statement.

g.     If the Court accepts the Defendant's plea of guilty, there will be no further trial or proceeding of any kind, and the Court will find him guilty.

h.     By pleading guilty, the Defendant will also be giving up certain valuable civil rights and may be subject to deportation or other loss of immigration status.

<u>Advisory Sentencing Guidelines Apply</u>

5.     The Defendant understands that the Court will determine a sentencing guidelines range for this case (henceforth the "advisory guidelines range") pursuant to the Sentencing Reform Act of 1984 at 18 U.S.C. §§ 3551-3742 (excepting 18 U.S.C. §§ 3553(b)(1) and 3742(e)) and 28 U.S.C. §§ 991 through 998. The Defendant further understands that the Court will impose a

sentence pursuant to the Sentencing Reform Act, as excised, and must take into account the advisory guidelines range in establishing a reasonable sentence.

Factual and Advisory Guidelines Stipulation

6.     This Office and the Defendant understand, agree and stipulate to the following Statement of Facts which this Office would prove beyond a reasonable doubt, and to the following applicable sentencing guidelines factors:

      a.    Statement of Facts

Gary Allen Densmore, the defendant, is 56 years old and was until early February 2011, temporarily residing in Anne Arundel County, Maryland. At that time he was on supervised release from the Southern District of Georgia, where he had been convicted in 1997 of multiple bank robberies, including some armed robberies, in Georgia and Florida.

On Wednesday, February 2, 2011, at about 12:00 p.m., the defendant, who was wearing a black jacket and knit cap, entered the Carrollton Bank, 427 Crain Highway North, Glen Burnie, Maryland. He approached a female teller and handed her a small blue zippered bag and a note announcing a bank robbery. The teller began to read the note, which said something about "100's, 50's, no dye packs, no alarm," and something about a gun. When she hesitated, the defendant took the note and bag from her and fled the bank.

On Thursday, February 3, 2011, at about 11:15 a.m., the defendant entered the Severn Savings Bank, 413 B Crain Highway, Glen Burnie, Maryland. He again provided a note to a teller which read, "put money in bag 100's 50's 20's I have a gun" or words to that effect. He also provided a blue zippered bag. The teller placed $2300 of the bank's money into the bag and Densmore fled the bank. Shortly after that the defendant fled Maryland in a vehicle he took out of state without the permission of its owner.

The defendant's crime spree continued in other jurisdictions. On Thursday, February 10, 2011, he robbed the Tri City Bank, Wauwatos, Wisconsin. Upon entering that bank, he approached a teller, handed her a note which read, "put money in bag no dye packs! I have a gun," or words to that effect. The teller put $5,154 of the bank's money in a zippered vinyl bag and fled the scene.

On Monday, February 14, 2011, the defendant robbed the Dakotaland Federal Credit Union in Brookings, South Dakota. Again, upon entering the bank, he went right to a teller and presented a note which read 100's, 50's and 20's, no dye packs, I have a gun," or words to that effect. He also presented a zippered blue bag into

which the teller placed $6,730 of the credit union's money in the bag. The defendant fled.

On Tuesday, March 1, 2011, Densmore robbed the US Bank at 6150 SE 14th Street, Des Moines, Iowa. Densmore again presented a note, which read," Put money in bag 100's 50's 20's I have a gun!" The teller gave him $3,290 of the bank's money, and he fled. Densmore was arrested a few days latter in the vicinity of Savage, Minnesota, on suspicion of operating a stolen vehicle.

All of the above referenced banks and credit union were insured by the Federal Deposit Insurance Corporation or the National Credit Union Association Board.

b.    Guideline Stipulation

(i)    Count Two (DMD Case No. RDB-11-0359):  Pursuant to U.S.S.G. § 2B3.1(a), the base offense level is 20.  There is an upward adjustment of 2 levels pursuant to §2B3.1(b)(1) because the property of a financial institution was taken.  There is an upward adjustment of 2 levels pursuant to §2B3.1(b)(2)(E) because of an implied threat.  The resulting offense level is 24.

(ii)    Count One (DMD Case No. RDB-11-0359) Relevant Conduct: Pursuant to U.S.S.G. § 2B3.1(a), the base offense level is 20.  There is an upward adjustment of 2 levels pursuant to §2B3.1(b)(1) because the property of a financial institution was taken.  There is an upward adjustment of 2 levels pursuant to §2B3.1(b)(2)(E) because of an implied threat.  The resulting offense level is 24.

(iii)    Count 1 (DSD Case No. RDB-11-0583):  Pursuant to U.S.S.G. § 2B3.1(a), the base offense level is 20.  There is an upward adjustment of 2 levels pursuant to §2B3.1(b)(1) because the property of a financial institution was taken.  There is an upward adjustment of 2 levels pursuant to §2B3.1(b)(2)(E) because of an implied threat.  The resulting offense level is 24.

(iv).    Count 1 (SDIA Case No. RDB-11-0572):  Pursuant to U.S.S.G. § 2B3.1(a), the base offense level is 20.  There is an upward adjustment of 2 levels pursuant to §2B3.1(b)(1) because the property of a financial institution was taken.  There is an upward adjustment of 2 levels pursuant to §2B3.1(b)(2)(E) because of an implied threat.  The resulting offense level is 24.

(v.)    Wisconsin robbery (relevant conduct):  Pursuant to U.S.S.G. § 2B3.1(a), the base offense level is 20.  There is an upward adjustment of 2 levels pursuant to §2B3.1(b)(1) because the property of a financial institution was taken.  There is an upward

adjustment of 2 levels pursuant to §2B3.1(b)(2)(E) because of an implied threat. The resulting offense level is 24.

(vi)    By operation of the grouping rules in Chapter 3D, the adjusted offense level before acceptance of responsibility is 29.

(vii)    This Office does not oppose a two-level reduction in the Defendant's adjusted offense level, based upon the Defendant's apparent prompt recognition and affirmative acceptance of personal responsibility for his criminal conduct. This Office agrees to make a motion pursuant to U.S.S.G. § 3E1.1(b) for an additional one-level decrease in recognition of the Defendant's timely notification of his intention to plead guilty. This Office may oppose *any* adjustment for acceptance of responsibility if the Defendant (a) fails to admit each and every item in the factual stipulation; (b) denies involvement in the offense; (c) gives conflicting statements about his involvement in the offense; (d) is untruthful with the Court, this Office, or the United States Probation Office; (e) obstructs or attempts to obstruct justice prior to sentencing; (f) engages in any criminal conduct between the date of this agreement and the date of sentencing; or (g) attempts to withdraw his plea of guilty. The final guideline offense level after acceptance of responsibility is **twenty-six (26)**.

7.    The Defendant understands that there is no agreement as to his criminal history or criminal history category, and that his criminal history could alter his offense level if he is a career offender or if the instant offense was a part of a pattern of criminal conduct from which he derived a substantial portion of his income.

8.    This Office and the Defendant agree that with respect to the calculation of the advisory guidelines range, no other offense characteristics, sentencing guidelines factors, potential departures or adjustments set forth in the United States Sentencing Guidelines will be raised or are in dispute.

<u>Obligations of the United States Attorney's Office</u>

9.    At the time of sentencing, this Office will recommend a reasonable sentence taking into account 18 U.S.C. § 3553 factors. At the time of sentencing, this Office will move to dismiss any open counts against the Defendant.

10.    The parties reserve the right to bring to the Court's attention at the time of sentencing, and the Court will be entitled to consider, all relevant information concerning the Defendant's background, character and conduct, including the conduct that is the subject of the counts of the Indictment that this Office has agreed to dismiss at sentencing.

Restitution

11.     The Defendant agrees to the entry of a Restitution Order for the full amount of the victims' losses. The Defendant agrees that, pursuant to 18 U.S.C. §§ 3663 and 3663A and §§ 3563(b)(2) and 3583(d), the Court may order restitution of the full amount of the actual, total loss caused by the offense conduct set forth in the factual stipulation. The Defendant further agrees that he will fully disclose to the probation officer and to the Court, subject to the penalty of perjury, all information, including but not limited to copies of all relevant bank and financial records, regarding the current location and prior disposition of all funds obtained as a result of the criminal conduct set forth in the factual stipulation. The Defendant further agrees to take all reasonable steps to retrieve or repatriate any such funds and to make them available for restitution. If the Defendant does not fulfill this provision, it will be considered a material breach of this plea agreement, and this Office may seek to be relieved of its obligations under this agreement.

Collection of Financial Obligations

12.     The Defendant expressly authorizes the U.S. Attorney's Office to obtain a credit report in order to evaluate the Defendant's ability to satisfy any financial obligation imposed by the Court. In order to facilitate the collection of financial obligations to be imposed in connection with this prosecution, the Defendant agrees to disclose fully all assets in which the Defendant has any interest or over which the Defendant exercises control, directly or indirectly, including those held by a spouse, nominee or other third party. The Defendant will promptly submit a completed financial statement to the United States Attorney's Office, in a form this Office prescribes and as it directs. The Defendant promises that the financial statement and disclosures will be complete, accurate and truthful, and understands that any willful falsehood on the financial statement will be a separate crime and may be punished under 18 U.S.C. § 1001 by an additional five years' incarceration and fine.

Waiver of Appeal

13.     In exchange for the concessions made by this Office and the Defendant in this plea agreement, this Office and the Defendant waive their rights to appeal as follows:

a.     The Defendant knowingly waives his rights, pursuant to 28 U.S.C. § 1291 or otherwise, to appeal the Defendant's conviction;

b.     The Defendant and this Office knowingly waive all right, pursuant to 18 U.S.C. § 3742 or otherwise, to appeal whatever sentence is imposed (including the right to appeal any issues that relate to the establishment of the advisory guidelines range, the determination of the defendant's criminal history, the weighing of the sentencing factors, and the decision whether to impose and the calculation of any term of imprisonment, fine, order of forfeiture, order of restitution, and term or condition of supervised release), except as follows: (i) the Defendant reserves the right to appeal any term of imprisonment to the extent that it exceeds the upper limit of the applicable

guideline range, (ii) and this Office reserves the right to appeal any term of imprisonment to the extent it is less than the bottom of the applicable guideline range.

        c.       Nothing in this agreement shall be construed to prevent the Defendant or this Office from invoking the provisions of Federal Rule of Criminal Procedure 35(a), or from appealing from any decision thereunder, should a sentence be imposed that resulted from arithmetical, technical, or other clear error.

        d.       The Defendant waives any and all rights under the Freedom of Information Act relating to the investigation and prosecution of the above-captioned matter and agrees not to file any request for documents from this Office or any investigating agency.

## Obstruction or Other Violations of Law

14.      The Defendant agrees that he will not commit any offense in violation of federal, state or local law between the date of this agreement and his sentencing in this case. In the event that the Defendant (i) engages in conduct after the date of this agreement which would justify a finding of obstruction of justice under U.S.S.G. § 3C1.1, or (ii) fails to accept personal responsibility for his conduct by failing to acknowledge his guilt to the probation officer who prepares the Presentence Report, or (iii) commits any offense in violation of federal, state or local law, then this Office will be relieved of its obligations to the Defendant as reflected in this agreement. Specifically, this Office will be free to argue sentencing guidelines factors other than those stipulated in this agreement, and it will also be free to make sentencing recommendations other than those set out in this agreement. As with any alleged breach of this agreement, this Office will bear the burden of convincing the Court of the Defendant's obstructive or unlawful behavior and/or failure to acknowledge personal responsibility by a preponderance of the evidence. The Defendant acknowledges that he may not withdraw his guilty plea because this Office is relieved of its obligations under the agreement pursuant to this paragraph.

## Court Not a Party

15.      The Defendant expressly understands that the Court is not a party to this agreement. In the federal system, the sentence to be imposed is within the sole discretion of the Court. In particular, the Defendant understands that neither the United States Probation Office nor the Court is bound by the stipulation set forth above, and that the Court will, with the aid of the Presentence Report, determine the facts relevant to sentencing. The Defendant understands that the Court cannot rely exclusively upon the stipulation in ascertaining the factors relevant to the determination of sentence. Rather, in determining the factual basis for the sentence, the Court will consider the stipulation, together with the results of the presentence investigation, and any other relevant information. The Defendant understands that the Court is under no obligation to accept this Office's recommendations, and the Court has the power to impose a sentence up to and including the statutory maximum stated above. The Defendant understands that if the Court ascertains factors different from those contained in the stipulation set forth above, or if the Court should impose any sentence up to the maximum established by statute, the Defendant cannot, for that reason alone,

8

withdraw his guilty plea, and will remain bound to fulfill all of his obligations under this agreement. The Defendant understands that neither the prosecutor, his counsel, nor the Court can make a binding prediction, promise, or representation as to what guidelines range or sentence the Defendant will receive. The Defendant agrees that no one has made such a binding prediction or promise.

Entire Agreement

16.     This letter supersedes any prior understandings, promises, or conditions between this Office and the Defendant and, together with the Sealed Supplement, constitutes the complete plea agreement in this case. The Defendant acknowledges that there are no other agreements, promises, undertakings or understandings between the Defendant and this Office other than those set forth in this letter and the Sealed Supplement and none will be entered into unless in writing and signed by all parties.

If the Defendant fully accepts each and every term and condition of this agreement, please sign and have the Defendant sign the original and return it to me promptly.

Very truly yours,

Rod J. Rosenstein
United States Attorney

By: _____
P. Michael Cunningham
Assistant United States Attorney

I have read this agreement, including the Sealed Supplement, and carefully reviewed every part of it with my attorney. I understand it, and I voluntarily agree to it. Specifically, I have reviewed the Factual and Advisory Guidelines Stipulation with my attorney, and I do not wish to change any part of it. I am completely satisfied with the representation of my attorney.

11/18/2011
_____
Date

_____
Gary Allen Densmore

I am Gary Allen Densmore's attorney. I have carefully reviewed every part of this agreement, including the Sealed Supplement, with him. He advises me that he understands and accepts its terms. To my knowledge, his decision to enter into this agreement is an informed and voluntary one.

11/18/11
_____
Date

_____
Katherine Tang Newberger, Esquire

9